IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANTHONY D. BELL,

                Plaintiff,                          CV-08-1232-ST

      v.                                        OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Anthony D. Bell, appeals the Commissioner's decision denying his application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 USC § 405(g) and § 1383(c). Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the following reasons, the Commissioner's decision is affirmed.

1 - OPINION AND ORDER

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 CFR § 416.920. *Bowen v. Yuckert*, 482 US 137, 140 (1987). The ALJ found Bell disabled by a combination of impairments, including back pain, depression, anxiety disorder, and a substance abuse disorder. Factoring out the effects of substance abuse, the ALJ determined that Bell would retain the residual functional capacity ("RFC") to perform work at the medium level of exertion, with slight impairment in attention, concentration, understanding, and memory which slightly limited his ability to perform simple, routine, repetitive tasks. Based on the testimony of the vocational expert ("VE"), the ALJ found this RFC did not preclude work in a significant number of jobs in the national economy. The ALJ determined that Bell's substance abuse was a contributing factor material to the determination of disability and therefore concluded that Bell was not disabled within the meaning of the Social Security Act. Admin. R. 24-32.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004).

## DISCUSSION

I.   **Claims of Error**

Bell contends the ALJ failed to assess his RFC accurately because he discounted the opinion of his treating physician, Michael Bower, MD, without providing a legally sufficient explanation for doing so. He challenges the hypothetical limitations used by the ALJ to elicit testimony from the VE and contends the VE's testimony conflicted with information in the United States Department of Labor publication *Dictionary of Occupational Titles* (4th ed 1991), *available at*

http://www.oalj.dol.gov/libdot.htm ("*DOT*").  He claims the record does not support the ALJ's conclusion that substance abuse was a contributing factor material to his disability.  Finally, Bell argues that evidence which was not before the ALJ, but was first presented to the Appeals Council after the ALJ's adverse decision, establishes that his mental impairments are equivalent in severity to one of the presumptively disabling conditions enumerated in 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

## II.     Opinion of Dr. Bower

The Commissioner obtained medical treatment records from the health care providers identified by Bell.  Bell received treatment from the Multnomah County Health Department through the Department of Corrections while incarcerated for periods between November 2000 and April 2004.  Admin. R. 157-206.  In July 2005, Bell was admitted to Providence Portland Medical Center after he attempted suicide by overdosing on his girlfriend's prescription medications.  *Id* at 243-510.  He was transferred to the psychiatric unit at Providence St. Vincent Medical Center for three days to assess the risk of harm to himself or others.  *Id* at 513-40.   Beginning in August 2005, Bell received primary care from Dr. Bower.  *Id* at 545-46, 558-60.

On October 8, 2006, Dr. Bower wrote an opinion letter stating that Bell suffered chronic headaches secondary to probable brain damage resulting from lack of oxygen during his suicide attempt in July 2005.  He stated Bell also had low back pain from arthritis which required chronic pain medication.  *Id* at 561.  Dr. Bower completed two medical opinion worksheets indicating his opinion as to the severity of Bell's limitations in work-related physical and mental abilities.  He indicated Bell could lift and carry up to 25 pounds frequently and 50 pounds occasionally,stand and walk for up to six hours, and sit without limitation, although he required a change of position from

time to time. He opined that Bell should avoid hazards while using pain medication and that chronic headaches decreased Bell's ability to concentrate. Dr. Bower anticipated Bell would be absent from work more than three days per month due to his impairments and treatment. *Id* at 565-68. Dr. Bower rated Bell's ability in all mental functions "good" or "fair," but opined that Bell would have intermittent problems with concentration, attendance, and maintaining a normal work schedule due to headaches and chronic back pain. *Id* at 569-72. In April 2007, Dr. Bower issued another opinion letter relating Bell's history of chronic low back discomfort and headaches and indicating he would be quite limited without pain medication in his ability to do productive physical work. *Id* at 574.

Bell contends the ALJ failed to provide a legally adequate explanation for discounting Dr. Bower's opinion. Although the ALJ gave Dr. Bower's opinion "little weight" (*id* at 31), the RFC assessment included limitations consistent with much of Dr. Bower's opinion. The RFC assessment was generally consistent with the exertional limitations in Dr. Bower's opinion and included limitations in concentration. *Id* at 27. Accordingly, the ALJ's RFC assessment only excluded Dr. Bower's opinion regarding *non*exertional postural limitations and Bell's inability to maintain a normal work schedule without excessive absences.

An ALJ can reject a physician's opinion that is inconsistent with the opinions of other physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002), quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989); *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas*, 278 F3d at 956-57. The ALJ found the functional limitations in the report of James Harris,

MD, who examined Bell on September 1, 2004 (Admin. R. 213-16), better supported by clinical findings and more consistent with the record as a whole than Dr. Bower's opinion. *Id* at 31, 215-16. Because Dr. Bower's opinion was contradicted by the conclusions of Dr. Harris, the ALJ was required to provide an explanation based on specific, legitimate reasons. *Thomas*, 278 F3d at 957.

  The ALJ explained that Dr. Bower's opinion was not supported by treatment or examination records showing clinical findings to support his conclusions. This reasoning is supported by the case record. Regarding Bell's complaint of chronic low back pain, Dr. Bower obtained diagnostic imaging that was negative for abnormalities that might be the source of the pain. Admin. R. 566. Regarding potential anoxic brain damage, the initial CT brain scan performed at the hospital and a later MRI study of the brain obtained by Dr. Bower were both normal. *Id* at 246, 545. Dr. Bower did not provide any treatment or examination records to supplement these completely normal objective findings. An ALJ can properly discount a treating physician's opinion that is conclusory in form and does not offer clinical or objective findings to support its conclusions. *Johnson v. Shalala*, 60 F3d 1428, 1432 (9th Cir 1995); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1195 (9th Cir 2004); *Meanal v. Apfel*, 172 F3d 1111, 1117 (9th Cir 1999); *Magallanes*, 881 F2d at 751.

  The ALJ pointed out that Dr. Bower had no first-hand information regarding the cause of Bell's back pain, but relied on Bell's subjective history of injuries in the distant past. Admin. R. 31. In identifying the July 2005 suicide attempt as the source of possible anoxic brain damage, Dr. Bower relied on Bell's subjective history that his headaches began at that time. The ALJ noted that the lay witness's written statement of December 2003, long before Bell's suicide attempt, indicated Bell frequently complained of head pain. *Id* at 31, 78. Although these circumstances do

5 - OPINION AND ORDER

not prove or disprove the existence of back pain or headaches, they support a reasonable inference that Dr. Bower premised his opinion primarily on the subjective history provided by Bell. Bell does not challenge the ALJ's determination that his subjective allegations lack credibility. *Id* at 29. It is proper for an ALJ to reject a physician's opinion that is premised on the claimant's subjective statements which the ALJ finds unreliable; the physician's opinion is no more credible than the statements upon which it is based. *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001); *Bray v. Comm'r of Soc. Sec.*, 554 F3d 1219, 1228 n8 (9th Cir 2009).

The ALJ also found it significant that Dr. Bower did not mention Bell's substance abuse history. Admin. R. 31. Substance abuse was a pervasive element in the treatment records and statements of all other sources in the case record. Dr. Bower's omission to mention it reasonably casts doubt on the extent of his knowledge of Bell's condition and history and diminishes the persuasiveness of his opinion.

In summary, the ALJ articulated specific, legitimate reasons for discounting Dr. Bower's opinion in favor of the opinion of Dr. Harris. Bell urges the court to substitute his interpretation of the evidence for that of the Commissioner. Because the ALJ's findings are based on inferences reasonably drawn from the record, the court may not substitute a different view of the evidence even if it is susceptible to more than one rational interpretation. *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).

**III.    Vocational Evidence**

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 US at 141-42; 20 CFR § 416.920(e), (f). The ALJ can satisfy

this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043.

Bell objects to the hypothetical questions used here on several grounds. Bell complains that the ALJ used an excessive number of hypothetical questions. This argument fails because Bell neither cites any authority limiting the quantity of hypothetical limitations an ALJ may explore nor offers any reason why an ALJ's inquiry should be limited in this way.

Bell contends the hypothetical limitations were confusing because the ALJ used imprecise and undefined terms. Bell objects to the ALJ's use in the hypothetical questions of the terms "slight impairment" and "slightly limited" instead of numerical percentages. This argument is not persuasive because the severity of a claimant's functional limitations cannot be measured with mathematical precision. Although the ALJ must accurately reflect the claimant's limitations, this does not require mathematical certainty. The terms used by the ALJ described the limitations he found supported by the record with reasonable accuracy. Bell also objects to the ALJ's use of the acronym "SRT" in his hypothetical questions. Based on the ALJ's RFC assessment, it is reasonably clear that this acronym refers to simple, routine tasks. In any event, Bell did not object to the terms used by the ALJ or ask for clarification at the hearing, and the VE gave no indication that the terms confused her. This apparent absence of confusion undermines Bell's argument that the hypothetical questions were incomprehensible.

Bell objects that the ALJ did not include some of the limitations identified by Dr. Bower. Because the ALJ discounted Dr. Bower's opinion for reasons described previously, he was not required to incorporate limitations based on that properly discounted evidence. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1164-65 (9th Cir 2001).

7 - OPINION AND ORDER

Bell also objects that the VE did not explain the foundation for her estimates of the erosion in job numbers she attributed to each set of hypothetical limitations posed by the ALJ. In disability cases, a VE's recognized expertise provides the necessary foundation for her testimony and no additional foundation is required. *Bayliss v. Barnhart*, 427 F3d 1211, 1218 (9th Cir 2005).

Finally, Bell contends the ALJ failed to ask the VE whether her testimony conflicted with information in the *DOT*. When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether that information conflicts with the *DOT* and to obtain a reasonable explanation for any apparent conflict. If the VE's testimony is inconsistent with *DOT* work requirement information, the ALJ must explain his resolution of the conflict before relying on the testimony to find that a claimant is not disabled. SSR 00-4p, 2000 WL 1898704 *4; *Massachi v. Astrue*, 486 F3d 1149, 1152 (9th Cir 2007).

The Commissioner concedes that the ALJ did not ask the VE whether her testimony was consistent with the *DOT*. Such a procedural error can be harmless where there is no conflict. *Massachi*, 486 F3d at 1154 n19. The job information in the *DOT* for the occupations identified by the VE is attached as an exhibit to the Commissioner's brief. Although Bell asserts that a conflict is quite apparent, he identifies nothing in the VE's testimony that is inconsistent with the job information in the *DOT*. In sum, the ALJ's error in failing to ask the VE about possible conflicts between her testimony and the *DOT* was harmless because no conflict appears to exist.

**IV.     Substance Abuse Analysis**

Bell has a long history of abusing cannabis, cocaine, heroin, methadone, alcohol, and other substances. Admin. R. 83, 120, 122, 177, 180. He admitted to a 30-year history of injecting heroin, using crack cocaine, and smoking marijuana. *Id* at 246, 253-55. He spent the majority of his adult

life in prison or engaging in criminal activities to support his drug habits. *Id* at 83, 210, 592. His work history consists primarily of drug dealing and facilitating prostitution. *Id* at 211, 254. At times Bell indicated a desire to quit using drugs and adopt a more legitimate lifestyle. *Id* at 213. However, he has demonstrated a lack of interest when offered drug treatment. *Id* at 519, 524.

Under 42 USC § 423(d)(2)(C), an individual cannot receive disability payments from the Social Security Administration if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. Under the regulations, when an ALJ finds a claimant disabled and there is evidence of substance abuse, the ALJ must determine which of the claimant's disabling limitations would remain if the claimant stopped using drugs and alcohol. 20 CFR § 416.935(b). If the remaining limitations would not be disabling, then the claimant's substance abuse is material and disability payments must be denied. *Id.* The claimant bears the burden of proving his substance abuse is not a contributing factor material to the disability determination. *Parra v. Astrue*, 481 F3d 742, 748 (9th Cir 2007); *Ball v. Massanari*, 254 F3d 817, 821 (9th Cir 2001).

The ALJ examined the medical evidence from periods when Bell was incarcerated. Admin. R. 27, 29. Those Corrections health records reflect that Bell was alert, oriented, pleasant, and cooperative; his thoughts were organized and he was able to engage easily in conversation; his mood ranged from euthymic to dysphoric; his affect was appropriately variable; and he did not exhibit signs of psychosis and denied hallucinations or suicidal ideation. *Id* at 158, 160, 168, 173, 179, 180, 188, 190, 191, 198. He was oriented to the date and time and able to write clear requests for medical attention demonstrating the basic ability to communicate in writing. *Id* at 163, 166, 171, 175, 182, 196, 205.

Written statements submitted by Bell and the lay witness indicate that when Bell was out of prison, he abused alcohol, heroin, methadone, marijuana, muscle relaxers, Neurontin, and other substances. He used drugs on a daily basis and used as much as possible. *Id* at 83, 120, 122. He engaged in criminal activities and begging to support his drug habits, and his functional capacity diminished sharply. He reportedly could not read or write or take care of his personal grooming and hygiene. *Id* at 78, 82, 116.

David deVidal, PhD, performed a consultative psychological evaluation in August 2004, reportedly two months after Bell's most recent incarceration and several months after Bell and the lay witness submitted written statements describing Bell's ongoing substance abuse. *Id* at 207-12. Dr. deVidal found that Bell exhibited signs of delusions and probable hallucinations. *Id* at 208, 211. He became disconnected from Dr. deVidal for several seconds at a time during the interview. *Id* at 208. He was not aware of the current year or month and seemed confused regarding the purpose of the evaluation. *Id*. Although he admitted a history of drug addiction, he claimed that he had been clean for two years and denied current or past alcohol abuse. *Id* at 210. Dr. deVidal diagnosed Bell with posttraumatic stress disorder, anxiety disorder, polysubstance abuse in reported remission, and probable borderline intelligence and assigned a GAF score of 35 to 40. *Id* at 212.

The ALJ determined that Bell's mental impairments, including substance abuse, resulted in marked restrictions in activities of daily living, social functioning, and concentration, persistence or pace. *Id* at 25-26. These findings are consistent with Dr. deVidal's evaluation. As a result, the ALJ found Bell's condition met the severity criteria for presumptive disability under Sections 12.04 *Affective Disorders*, 12.06 *Anxiety-related Disorders*, and 12.09 *Substance Addiction Disorders* of the Listing of Impairments. *Id* at 26.

The ALJ determined that Bell's mental impairments in the absence of substance abuse would result in mild restrictions in activities of daily living, no difficulties in social functioning, and mild difficulties with concentration, persistence or pace. *Id* at 26-27. As a result of these findings, Bell did not satisfy the criteria for any of the presumptively disabling mental impairments enumerated in the Listing of Impairments. The ALJ found that, in the absence of substance abuse, Bell would remain slightly limited in attention, concentration, understanding, and memory and would be slightly limited in the ability to perform simple, routine, repetitive tasks. *Id* at 27. These findings are consistent with the clinical observations recorded in the Corrections health records. The ALJ could reasonably infer that illicit substances were less readily available to Bell while he was incarcerated, and that the drastic changes in his mental status after leaving prison were attributable to a significant increase in his substance abuse.

Bell claims he was abstinent from substance abuse after he got out of prison, including the time when he attempted suicide in July 2005. This assertion is refuted by the record. The written statements indicate that after leaving prison, Bell abused an array of substances in whatever quantities he could obtain. *Id* at 83, 120, 122. Bell reportedly attempted suicide by overdosing on his girlfriend's prescriptions for Seroquel, an anti-psychotic medication, and Flexeril, a muscle relaxing agent. Urine toxicology tests from the hospital showed the presence of benzodiazapines, opiates, and marijuana, as well. *Id* at 245. The presence of these substances corroborates the lay witness's description of Bell's ongoing substance abuse and refutes his claim of abstinence at the time of his suicide attempt.

11 - OPINION AND ORDER

Bell's claim of abstinence from drugs and alcohol is undermined by similar assertions, apparently false, made to the examining consultants. The ALJ pointed out that Bell told Dr. deVidal and Dr. Harris in August and September 2004 that he had been clean of street drugs for two years. *Id* at 29. At about the same time, the lay witness and Bell himself indicated he was engaged in ongoing substance abuse. *Id* at 83 (December 2003), 120 (February 2004), 122 (February 2004).

In summary, Bell has failed to establish that his disabling limitations would remain if he stopped abusing drugs. He has offered no reliable evidence of his mental impairments during periods of sobriety and has failed to satisfy the burden of proof. *Parra*, 481 F3d at 748; *Ball*, 254 F3d at 821. The medical records from periods during which Bell was incarcerated suggest he had none of the delusions, hallucinations, inability to attend and focus on conversation, inability to write, and other limitations found during periods of substance abuse. Accordingly, the ALJ's determination that substance abuse is a contributing factor material to the determination of disability is a rational interpretation of the evidence and will not be disturbed. *Andrews*, 53 F3d at 1039.

## V.     Post-Decision Evidence

On April 7, 2008, ten months after the ALJ's adverse decision, Mark Lehman, PhD, performed a psychological evaluation requested by a Texas state disability determination agency, presumably based on a new application for disability benefits. Admin. R. 590-95. Dr. Lehman interviewed Bell, performed a mental status examination, and administered standard intelligence and achievement tests. In the interview, Bell told Dr. Lehman he had a history of substance abuse, but had been sober since he was incarcerated in the 1990s. *Id* at 591. The mental status examination indicated Bell was not oriented to the month or year and had impairments in memory, fund of

knowledge, and abstract thinking. His mood was depressed and his affect was flat. *Id* at 592-93. On intelligence tests, Bell obtained IQ scores ranging from 68 to 72. *Id* at 593. On achievement tests, he obtained scores indicating academic abilities at the grade school level. *Id* at 594. Dr. Lehman made provisional diagnoses of depressive disorder, polysubstance dependence in reported remission, and mild mental retardation. He indicated the mild mental retardation diagnosis needed to be corroborated with longitudinal history, such as school records and other objective material. *Id.*

In the Ninth Circuit, the district court may consider new materials that the Appeals Council addressed in the context of denying the claimant's request for review. *Harman v. Apfel*, 211 F3d 1172, 1180 (9th Cir 2000); *Ramirez v. Shalala*, 8 F3d 1449, 1451-52 (9th Cir 1993). Where the claimant is seeking review based on evidence not presented to the ALJ, the Appeals Council must provide such review only when the submitted evidence is new, material, and relates to the period on or before the date of the ALJ's decision. *Ramirez*, 8 F3d at 1452; 20 CFR § 416.1470(b).

Here, the Appeals Council concluded that the new evidence from Dr. Lehman was not material because it provided no basis for changing the ALJ's decision. *Id* at 7. Evidence is material if it creates a reasonable possibility that the outcome of the case would change if the evidence were considered. *Booz v. Sec'y of Health & Human Servs.*, 734 F2d 1378, 1380-81 (9th Cir 1984). Dr. Lehman's report does not reasonably create such a possibility because there is no reliable evidence that the test results Dr. Lehman obtained were untainted by substance abuse. Bell's assertion in his interview with Dr. Lehman that he has been sober since being incarcerated in the 1990s is refuted by the record as a whole. Accordingly, Dr. Lehman's report does not change the outcome of the substance abuse analysis by showing that Bell has mental impairments that would

13 - OPINION AND ORDER

persist if he stopped using drugs and alcohol. To meet his burden on that issue, Bell must present reliable evidence that he achieved scores showing mental retardation in the absence of substance abuse.

Bell argues Dr. Lehman's report is material because it establishes that his mental condition satisfies the criteria for Section 12.05C of the Listing of Impairments. Listing 12.05 for *Mental Retardation* requires evidence establishing "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e. the evidence demonstrates or supports onset of the impairment before age 22." Paragraph C of Listing 12.05 provides that the first element, the significant subaverage intellectual functioning, may be established with a valid IQ test score between 60 and 70.

Dr. Lehman indicated the IQ measures he obtained were provisional and required further validation. Admin. R. 594. Accordingly, they do not qualify as valid IQ scores or satisfy the listing. Moreover, Dr. Lehman's report does not demonstrate that Bell's deficits in intellectual functioning began before age 22. Dr. Lehman's report is not material because it does not create a reasonable possibility that the outcome of the case would change. *Booz*, 734 F2d at 1380-81. Accordingly, the Appeals Council did not err by declining to review the ALJ's decision. 20 CFR § 416.1470(b); *Ramirez*, 8 F3d at 1452.

## **ORDER**

For the foregoing reasons, the Commissioner's decision is affirmed, and this case is dismissed.

DATED this 20th day of May, 2010.

                                                   s/ Janice M. Stewart_____
                                                   Janice M. Stewart

United States Magistrate Judge

15 - OPINION AND ORDER